**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **RODNEY RAMOS**, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**PETCO ANIMAL SUPPLIES, INC.**, a Corporation, and **RICHARD COUGHLIN**, **TORIBIO SALINAS**, **STEVEN KING**, **FELIX BRAVO**, and **JOHN DOES 1-500**, Individuals,<br><br>Defendants. | **Docket No.:** 4:16-cv-767<br><br>**COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND** |

## COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff RODNEY RAMOS, by and through his attorneys, DEAN OMAR & BRANHAM LLP and THE JTB LAW GROUP, LLC, as and for his Complaint against Defendants PETCO ANIMAL SUPPLIES, INC. ("Petco" or "the Company"), RICHARD COUGHLIN, TORIBIO SALINAS, STEVEN KING, FELIX BRAVO, and JOHN DOES 1-500, alleges of his own knowledge as to his own conduct and as to occurrences in which he was involved, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. This case arises out of the persistent and willful failure of Defendants PETCO ANIMAL SUPPLIES, INC. ("Petco" or "the Company"), RICHARD COUGHLIN, TORIBIO SALINAS, STEVEN KING, FELIX BRAVO, and JOHN DOES 1-500 to properly compensate Plaintiff RODNEY RAMOS, a former hourly employee of Defendants, and all other current and former

hourly employees at Petco store #1477, located at 2519 East Expressway 83, Mission, Texas 78572 (the "Mission Store"); at Petco store #2413, located at 821 East Expressway 83, Weslaco, Texas 78596 (the "Weslaco Store"); and at Petco stores throughout Petco's District #52.

2. Defendants required or allowed Mr. Ramos and other hourly employees at the Mission Store and the Weslaco Store, and at stores throughout Petco's District #52, to work "off the clock" on numerous occasions, and did not compensate them for that time, in violation of the Fair Labor Standards Act ("FLSA," the "Act"), 29 U.S.C. §§ 201 *et seq.*, and the Texas Labor Code ("TLC"), Tex. Lab. Code § 62.001 *et seq*.

3. By reason of Defendants' persistent and willful violations of the FLSA and the TLC, Mr. Ramos was illegally underpaid for his work.

4. Mr. Ramos brings this action to recover monetary damages, liquidated damages, interest and costs, including reasonable attorney's fees, as a result of Defendants' willful violation of the FLSA and TLC.

5. Mr. Ramos also asserts FLSA claims pursuant to 29 U.S.C. § 216(b) on behalf of all other current and former hourly employees at the Mission Store and the Weslaco Store, and at stores throughout Petco's District #52, who were and are also affected by Defendants' practice of failing to pay their employees for all the time that they are required or allowed to work.

6. Mr. Ramos also asserts TLC claims pursuant to Fed. R. Civ. P. 23 on behalf of all other current and former hourly employees at the Mission Store and the Weslaco Store, and at stores throughout Petco's District #52, who were and are also affected by Defendants' practice of failing to pay its employees for all the time that they are required or allowed to work.

7. For at least three (3) years prior to the filing of this Complaint, Defendants have willfully and intentionally committed systematic and widespread violations of the above-described federal and state statutes and regulations, in the manner described herein.

8. Mr. Ramos also brings an individual claim under Section 215 of the Act, 29 U.S.C. § 215(a)(3), for retaliatory discharge.

9. Mr. Ramos also brings an individual claim for Defendants' failure to reasonably accommodate his disability, as required by the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112(5)(A).

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the FLSA and the ADA, both of which are federal statutes.

11. As to the claims under the TLC, this Court has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because all or substantially all of the events and omissions that give rise to Mr. Ramos's claims occurred in this District.

## THE PARTIES

### *Plaintiff*

13. At all relevant times, Plaintiff RODNEY RAMOS was, and currently is, a resident of Hidalgo County, Texas.

14. Mr. Ramos was employed from March 31, 2012, until March 25, 2015, at the Mission Store and the Weslaco Store. Throughout his tenure as an employee of Defendants, Mr. Ramos was paid on an hourly basis.

15. Mr. Ramos consents to being a party pursuant to 29 U.S.C. § 216(b), and brings his FLSA claims based on the allegations herein as a representative party of a prospective collective of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

16. Defendant PETCO ANIMAL SUPPLIES, INC. is a privately held Delaware corporation, with corporate headquarters located at 9125 Rehco Road, San Diego, California 92121, and with an address for service of process at 2710 Gateway Oaks Dr., Suite 150N, Sacramento, California 95833.

17. During all times relevant herein, Defendant RICHARD COUGHLIN was the District Manager for Petco District #52, the district in which both the Mission Store and the Weslaco Store are located.

18. Defendant TORIBIO SALINAS, who also went by "Tony" Salinas, was the General Manager of the Weslaco Store until leaving the Company in late December 2014 or early January 2015.

19. During all times relevant herein, Defendant STEVEN KING was the General Manager of the Mission Store and, from approximately November 2014 until approximately March 22, 2015, functioned as Mr. Ramos's direct supervisor at the Weslaco Store as well. On information and belief, Mr. King resides in this Court's District.

20. Defendant FELIX BRAVO was the General Manager of the Weslaco Store who terminated Mr. Ramos's employment. On information and belief, Mr. Bravo resides in this Court's District.

21. Defendants JOHN DOE 1-500 are the current and former General Managers of the Petco stores in Petco's District #52 who required or allowed hourly employees in their stores to work off the clock.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers Or, In The Alternative, Constitute A Single Employer*

22. Mr. Ramos repeats and realleges all preceding paragraphs of this Complaint inclusive, as if fully set forth herein.

23. At all times relevant herein, Petco was the employer of Mr. Ramos and of all other hourly employees at the Mission Store, the Weslaco Store, and the other Petco stores in Petco's District #52.

24. At all times relevant herein, Defendants Richard Coughlin, Tony Salinas, and Steven King acted directly or indirectly in the interests of Petco in relation to Mr. Ramos and all other current and former hourly employees at the Mission Store and/or the Weslaco Store, and so were "employers" of Mr. Ramos and were and are "employers" of these other employees, as that term is defined in the FLSA.

25. During the time of Mr. Ramos's employment, he made several complaints directly to Defendant Coughlin who, as District Manager, had the authority to act on those complaints on behalf of Defendant Petco. As will be explained below, Coughlin's actions and/or inaction in response to Mr. Ramos's complaints led to Mr. Ramos's wrongful termination.

26. During the time of Mr. Ramos's employment, Defendants Salinas and King, acting directly or indirectly in the interests of Petco:

a. supervised Mr. Ramos;

b. determined his work schedule;

c. determined his compensation; and

d. maintained records pertaining to his employment.

27. At all times relevant herein, Defendants John Doe 1-500 acted directly or indirectly in the interests of Petco in relation to all current and former hourly employees at stores throughout Petco's District #52, and so are and were "employers" of these employees, as that term is defined in the FLSA, *see* 29 U.S.C. § 203, and the TLC, *see* Tex. Lab. Code § 62.002(6).

28. During all times relevant herein, Defendants John Doe 1-500, each acting directly or indirectly in the interests of Petco in relation to the hourly employees at his store:

e. supervised such employees;

f. determined their work schedules;

g. determined their compensation; and

h. maintained records pertaining to their employment.

29. At all relevant times, Defendants jointly employed Mr. Ramos and all similarly situated individuals, and were their employers within the meaning of the FLSA and the TLC.

30. In the alternative, Defendants constituted a single employer of Mr. Ramos and all similarly situated individuals.

***Defendants Coughlin, Salinas, and King, Acting in the Interests of Petco, Required or Allowed Mr. Ramos and Other Hourly Paid Managers to Work "Off the Clock" Without Compensation, in Violation of Their Rights Under the FLSA and the TLC***

31. Mr. Ramos repeats and realleges all preceding paragraphs of this Complaint inclusive, as if fully set forth herein.

32. Mr. Ramos was hired on March 31, 2012, as Manager of the Inventory and Pricing Department at the Mission Store. He reported to Defendant Steven King, the General Manager of that store.

33. Mr. Ramos was moved to the Weslaco Store on or about August 5, 2012, also as Manager of the Inventory and Pricing Department. He reported to Defendant Toribio "Tony" Salinas, the General Manager of that store.

34. On or about July 21, 2013, Mr. Ramos was made Manager of the Companion Animal Department at the Weslaco Store, at the direction of Defendant Coughlin.

35. In late December of 2014 or early January of 2015, Defendant Salinas left the Company, and Mr. Ramos was asked by Defendant Steven King to take over Salinas's duties as Acting General Manager. In that role, Mr. Ramos was supervised by King, who was on-site at the Weslaco Store two or three days per week until mid-March of 2015, when another individual became General Manager of the Weslaco Store.

36. On or about his first day at work, Mr. Ramos was made aware that hourly paid managers were expected to work after clocking out. Mr. Ramos was told by others that this was a regular practice because it was impossible for managers to complete all of their assigned work during regular work hours or with the small amount of overtime that the Company would sometimes approve.

37. Mr. Ramos was informed that Petco's upper management was aware that hourly paid managers such as Mr. Ramos were required or allowed to work off the clock.

38. Mr. Ramos and other hourly Petco managers were also instructed by their General Managers to clock out for 30 minutes each day for lunch, but would frequently be required to work during those 30 minutes.

39. On more than one occasion, Mr. Ramos emailed Defendant Coughlin to tell him that, in order to finish the workload at the Weslaco Store, Coughlin needed to approve either more employees or more hours for existing employees. Defendant Coughlin would reply by telephone,

saying in substance that he would not approve either, and that existing employees needed to "do what needs to be done."

40. Mr. Ramos understood Coughlin's comments as encouragement to work off the clock, or at least an indication that Coughlin was aware of and accepted the fact that hourly paid managers were already working off the clock.

41. Mr. Ramos also told King at least four or five times that he and others were working off the clock. King's response was always a variation of the same "do what needs to be done" instruction that Coughlin had given.

42. Mr. Ramos would often clock his actual hours for the first few days of the week, and then intentionally enter fewer hours than he actually worked for the remaining days, in order not to exceed forty hours for the week, as he was instructed.

43. The great majority of the hourly paid managers at the Weslaco Store also worked off the clock, including Efrain Celadon, the Manager of the Inventory and Pricing Department, and Sarah Woodruff, the Manager of the Cat & Dog Department.

44. For his part, Mr. Ramos explicitly instructed the employees who reported to him that they should not work off the clock. On at least three occasions Mr. Ramos discovered employees working off the clock and told them to go home.

45. However, Mr. Ramos himself continued to work off the clock, in order to accomplish all of his assigned tasks. He also continued to report that he was doing so, and his reasons for doing so, to his supervisors.

46. At some point in mid-2013, Petco investigated these self-reports. On July 1, 2013, the Company sent Mr. Ramos the following letter:

> Dear Rodney,
>
> You have recently reported that you have worked hours which were not previously recorded in your time records. We have conducted a thorough investigation into your claims. While Petco has no record or other knowledge of these unreported hours, the company agrees to pay you for 1.5 regular hours of work as a good faith effort to account for any unpaid wages.
>
> With this payment, we are concluding our investigation and consider this issue fully resolved.
>
> By signing this document, you acknowledge that this notice has been discussed with you and you understand what pay will be issued to you to resolve the aforementioned matter. Please be reminded of Petco's strict policy prohibiting off-the-clock work and our policy requiring hourly associates to accurately record all hours worked, subject to disciplinary action up to and including termination.

Exhibit A.

47. The letter was signed by Mr. Ramos and by Sally Logan, a corporate Human Resources representative. Mr. Ramos signed the document in order to keep his job, but even after signing it he was still instructed by Coughlin and King to "do what needs to be done," and so he continued to work off the clock.

48. By the time Mr. Ramos was functioning as Acting General Manager at the Weslaco Store, he was working on average approximately twenty hours per week off the clock, during the weeks he was able to work.

49. Virtually all of these hours were in excess of forty hours in a week.

50. During the time that Mr. Ramos was functioning as Acting General Manager at the Weslaco Store, he sometime adjusted the timecards of other hourly paid managers at the Store, to make sure that they did not report more than forty hours of work per week, so that the Store would meet the targets set by Defendants.

51. Although they did not keep track of each such adjustment, Defendants Coughlin and King were generally aware that Mr. Ramos was making such adjustments.

52. Mr. Ramos made sure that the employees whose timecards he adjusted were also aware that he was doing so. For instance, Mr. Ramos made sure that Sarah Woodruff, the Manager of the Cat & Dog Department, was present when he adjusted her timecards.

53. Both the FLSA and the TLC require employers to pay employees at least the federal minimum wage for all time they are required or allowed to work. *See* 29 U.S.C. § 206; Tex. Lab. Code § 62.051.

54. In addition, the FLSA and its accompanying regulations make clear that:

a. employees must be paid an overtime premium of one and one-half (1½) times their regular rate of pay for all time worked in excess of forty (40) hours in a workweek, *see* 29 U.S.C. § 207(a)(1);

b. an employee must be paid for all the time he or she is required to be at work, *see* 29 CFR § 785.47; and

c. mealtimes are to be counted and paid as hours worked unless the employee is "completely relieved from duty for the purposes of eating regular meals." *See* 29 CFR § 785.91(a).

55. By requiring or allowing Mr. Ramos and other hourly paid managers to work off the clock and to work during their unpaid lunch periods, Defendants violated and are violating these and other provisions of the FLSA and the TLC.

***Early in his Tenure at Petco, Mr. Ramos had a Workplace Accident and was Placed on Restricted Duty. Defendants Salinas, Coughlin, and King Were Aware of This, but Required Mr. Ramos to do Work that Violated his Restrictions.***

56. Mr. Ramos repeats and realleges all preceding paragraphs of this Complaint inclusive, as if fully set forth herein.

57. On July 9, 2012, a little more than three months after Mr. Ramos started, he was involved in a workplace accident at the Mission Store.

58. Mr. Ramos was on the loading dock, helping to unload pallets stacked with 50 lb. bags of dog food from a truck, when about half of a seven-foot tall stack of the bags fell on top of him, burying him briefly.

59. Defendant King was told about the accident a few minutes after it happened. King left his office and went to the loading dock.

60. Mr. Ramos had been extracted from beneath the pile of dog food bags by the time King arrived on the loading dock. When he saw the accident scene, King's only response was to laugh and tell Mr. Ramos and some other workers to clean up the mess.

61. Mr. Ramos told King that day that his neck and shoulder had been injured in the accident.

62. Almost every day during the month of July 2012, Mr. Ramos told King that he was in pain from his injuries, and asked to be allowed to file a workers' comp claim and to see a doctor. King's response was always along the lines of "we can't afford to lose you from work right now."

63. Mr. Ramos continued to work while in pain.

64. Mr. Ramos was moved to the Weslaco Store on or about August 15, 2012, but was still not allowed to file a workers' comp claim or to see a doctor.

65. Mr. Ramos called the Company hotline in early September, to report his supervisors' lack of response to his accident; that he and other hourly employees were being required or allowed to work off the clock; and instances of mismanagement and wrongdoing at the Mission and Weslaco stores.

66. On or about September 19, 2012, Defendant Coughlin called Mr. Ramos, in response to Mr. Ramos's comments to the hotline. Mr. Ramos told Coughlin his story, and Coughlin asked him to send a written report.

67. On or about September 20. 2012, Defendant King called Mr. Ramos to ask about the accident, even though Mr. Ramos had by then already told him numerous times what happened.

68. The next day, September 21, 2012, King gave Mr. Ramos some but not all of the paperwork he needed to file a workers' comp claim. Mr. Ramos finished his shift and then went to see a doctor. He was diagnosed with a dislocation of his right shoulder and a strain to his neck.

69. On September 22, 2012, Mr. Ramos sent Defendant Coughlin a four-page statement, attached hereto as Exhibit B, which mentions the accident and various problems with the management of the Mission and Weslaco Stores.

70. At some point after that, Mr. Ramos was given assistance and guidance in filing a workers' comp claim.

71. On August 7, 2014, a doctor designated by the Texas Department of Insurance certified that Mr. Ramos had reached "clinical maximum medical improvement" on October 24, 2013, and that he had a permanent "whole body impairment rating" of ten percent. *See* Exhibit C hereto.

72. His doctor recommended that he not be required to lift, carry, push or pull loads of more than 20 lbs.; that he not be required to kneel, crouch or squat; that he not be required to reach above shoulder level or below waist level; and that he not be required to bend or twist at the waist repetitively.

73. Mr. Ramos communicated his work restrictions to Defendants Salinas and King.

74. Defendants could have observed Mr. Ramos's work restrictions, and thereby made a reasonable accommodation for his disability, without imposing any undue burden on the operations of the Company.

75. Instead, Defendants continued to require Mr. Ramos to do work that violated his restrictions, including the lifting of heavy aquarium/terrarium tanks, bags of animal food, and other heavy items; reaching across long distances to clean animal enclosures and to feed animals; and bending or squatting.

76. Mr. Ramos was also required to continue helping to receive truck deliveries, which involved pushing and pulling heavy loads with pallet jacks.

77. Defendants Salinas and King would tell Mr. Ramos that he had to do this work because there were no other employees available.

78. Defendant Coughlin was also made aware of Mr. Ramos's restrictions. Coughlin visited the Weslaco Store on more than one occasion during this period, and saw that Mr. Ramos was being required to violate his work restrictions, but did nothing to stop it.

79. Mr. Ramos was required to violate his work restrictions in this way until his discharge on March 25, 2015.

***Mr. Ramos was Terminated in Retaliation for his Complaints About Management at the Mission and Weslaco Stores, Including Complaints About Being Required to Work Off the Clock, and Because He Took "Too Much" Time Off From Work for Medical Treatments.***

80. Mr. Ramos repeats and realleges all preceding paragraphs of this Complaint inclusive, as if fully set forth herein.

81. Almost from the beginning of his tenure with Petco, Mr. Ramos was harassed and disrespected by Defendant King, because Mr. Ramos had refused King's requests to participate in, or at least turn a blind eye towards, various inappropriate and/or illegal management practices at the Mission Store.

82. On September 5, 2012, Defendant King came to the Weslaco Store to give Mr. Ramos a copy of an Employee Performance Notice ("EPN"), alluding to but not describing inappropriate

behavior and comments by Mr. Ramos on August 30, 2012, both towards his superiors and towards other employees. *See* Exhibit D hereto.

83. King refused to explain the EPN in any detail to Mr. Ramos, and instead simply demanded that he read it and sign it.

84. The Notice served as a "first and final written notice" for Mr. Ramos, and indicated that, "[s]hould [he] fail to abide by all Petco policies and procedures, further disciplinary action will be taken up to and including termination." *Id.* at 2.

85. Mr. Ramos disputed the Notice, writing:

> These statements of harassment and lewd acts against other associates are false and dishonest. At no time was I question[ed] on these allegations of misconduct towards associates and [I] find this EPN in violation of my trust here as a manager with Petco. I have not [been] dishonest [with] Petco at any time. … I feel that this EPN is not fair and [has] not given me the opportunity to defend myself. I am a man of faith and honor[.] I would not conduct myself in these alleged allegations [*sic*] especially when upper management has been told of entrapment by other associates towards myself. Harassment allegations are also misleading.

*Id.* at third page of Exhibit.

86. Mr. Ramos was never given any details about the allegations contained in the EPN, and believes that Defendant King fabricated the allegations to use in his attempts to terminate Mr. Ramos's employment.

87. As set forth above, on September 22, 2012, Mr. Ramos sent a detailed written complaint to Defendant Coughlin, the District Manager for Petco District # 52, in which both the Mission and the Weslaco stores were located. *See* Exhibit B.

88. In that complaint, Mr. Ramos described the accident in which he injured his shoulder, and how Defendant King reacted, including how King did not provide the information Mr. Ramos needed to file a workers' comp claim.

89. Mr. Ramos also described some of the inappropriate and/or illegal practices Defendant King had asked him to participate in or ignore, including:

a. incidents in which Mr. Ramos was asked by Defendant King and Assistant General Manager Cynthia Ramirez to keep fraudulent records or to alter records fraudulently, including both cash-register records and live-animal care records;

b. incidents in which fixtures, tools, and equipment were improperly given away or sold by Defendant King and/or Ms. Ramirez, or with their knowledge;

c. multiple incidents in which Mr. Ramos was instructed to log onto training programs while working on the floor at the Mission Store, as well as the inclusion of inaccurate training hours on Mr. Ramos's paychecks, all so that the store could report fewer work hours and stay within its budget;

d. the fact that Mr. Ramos was not paid for mileage he incurred using his personal vehicle to make bank deposits for the store;

e. that it was "a regular practice" for hourly managers to work off the clock and through their unpaid lunch breaks;

f. problems with employee conduct, morale and discipline, and regarding inappropriate access to and sharing of confidential employee information; and

g. incidents in which employees were asked by Defendant King to make false statements and complaints about Mr. Ramos's conduct as a manager, to be used in building a false case for his termination.

*See id.*

90. A few days after Mr. Ramos sent his complaint to Coughlin, he was contacted by Cynthia Ramirez, the Assistant General Manager at the Mission Store. She told Mr. Ramos that Coughlin had contacted King about Mr. Ramos's complaint, and that King was upset and was going to look for a way to have Mr. Ramos terminated.

91. At the end of December 2012 or the beginning of January 2013, Defendant Coughlin came to the Weslaco Store unannounced to interview Mr. Ramos about his complaint. Coughlin was accompanied by Art (LNU), from Corporate Loss Prevention in California, and by Matt (LNU), from Regional Human Resources.

92. Coughlin and the other two interrogated Mr. Ramos for 7-8 hours about his complaint, demanding that he prove his allegations.

93. Mr. Ramos felt that the meeting was intended not to get to the bottom of his allegations but rather to intimidate him and to cover up and explain away whatever evidence Mr. Ramos had.

94. Nevertheless, Mr. Ramos was able to show Defendant Coughlin and the other two Petco higher-ups documents that supported many of the allegations in his complaint.

95. Mr. Ramos was never informed of any follow-up from the meeting. However, from that point Coughlin scrutinized Mr. Ramos's department more than others.

96. On June 18, 2014, Mr. Ramos requested and received leave under the Family and Medical Leave Act ("FMLA"), in order to have surgery to repair a hernia. He was out on unpaid leave until July 13, 2014, during which time his job was protected.

97. On August 22, 2014, Mr. Ramos was diagnosed with stage III papillary thyroid cancer with metastases to the lymph nodes. He was away from work for almost thirty non-consecutive days for follow-up appointments and treatment.

98. Sometime in October 2014, Mr. Ramos was told by Defendant Salinas that Defendant Coughlin had told him (Salinas) that Mr. Ramos was a liability to the Company because of his frequent need for medical leave, and that Salinas should look for a way to terminate Mr. Ramos's employment.

99. Mr. Ramos had cancer surgery on December 16, 2014, after which his doctor recommended a recovery period of a month and a half.

100. During that time Defendant Salinas left the Company. Defendant Coughlin called Mr. Ramos during his recovery to ask him to take over Mr. Salinas's duties, with no change in job title and no increase in pay.

101. Mr. Ramos went back to work, after a recovery of only nine days, as opposed to the month and a half that his doctor had recommended.

102. On January 22, 2015, Mr. Ramos went out for a week and a half for radiation treatments.

103. Mr. Ramos was terminated on March 25, 2015 – just five days shy of his three-year work anniversary, on which he would have received an automatic raise, a bonus, and additional paid time off.

104. Mr. Ramos was terminated by Defendant Bravo, the new General Manager of the Weslaco Store.

105. Mr. Ramos was told that he was being terminated for having filled out time cards incorrectly for himself and for a subordinate employee during the time he was functioning as Acting General Manager of the Weslaco Store.

106. However, Defendants Coughlin, Salinas, and King had known for at least three years that Mr. Ramos was engaging in this behavior, and they either actively encouraged it or turned a blind eye to it.

107. Mr. Ramos therefore believes that he was terminated, at least in part, in retaliation for his complaints to Defendant Coughlin, including his complaints about Defendant King's misfeasance and about being required to work off the clock.

108. Mr. Ramos also believes he was terminated, at least in part, because Defendants Coughlin, King, and/or Bravo had begun to see him as a liability to the Company because of his frequent need for medical leave.

109. Section 215 of the FLSA prohibits employers from discharging or discriminating in any other manner against any employee for filing a complaint about, *inter alia*, the employer's pay practices.

110. Section 12112 of the ADA prohibits employers from discharging or taking any other adverse employment action against any employee because of his disability.

111. Mr. Ramos was terminated in violation of both of these statutes.

**COLLECTIVE/CLASS ACTION ALLEGATIONS**

112. Mr. Ramos repeats and realleges all preceding paragraphs of this Complaint inclusive, as if fully set forth herein.

113. At all times relevant herein, Defendants had a common policy or practice of requiring or allowing Mr. Ramos and all other hourly paid managers in Petco's District #52 to work off the clock, without pay, including requiring or allowing them to work during unpaid lunch periods.

114. As a result of this policy, Mr. Ramos and all other hourly paid managers in Petco's District #52 regularly perform or performed work for which they were not or are not paid.

115. Most, if not all, of that unpaid work was or is in excess of forty hours per week, and so should be paid at a rate of one and one half times the managers' regular pay rate(s).

116. At all times relevant herein, Mr. Ramos and all other hourly paid managers in Petco's District #52 are and have been similarly situated, in that they are and have been subjected to Defendants' common policies and practices of requiring or allowing off the clock work.

117. Mr. Ramos brings his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all other hourly paid managers in Petco's District #52 who were and are required or allowed to work off the clock, without pay.

118. The proposed FLSA Collective is defined as:

> **All hourly paid managers in Petco's District #52 at any time from three (3) years prior to the filing of this Complaint to the present, who were and are required or allowed to work off the clock, without pay.**

119. Mr. Ramos brings his TLC claims as a class action under Rule 23 of the Federal Rules of Civil Procedure and the TLC, on behalf of himself and all other hourly paid managers in Petco's District #52.

120. The proposed Rule 23 Class is defined as:

> **All hourly paid managers in Petco's District #52 at any time from three (3) years prior to the filing of this Complaint to the present, who were and are required or allowed to work off the clock, without pay.**

121. This action is properly brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

122. The class is so numerous that joinder of all members is impractical. While the exact number and identities of class members are unknown at this time and can only be ascertained through appropriate discovery, Mr. Ramos believes that at least forty (40) hourly paid managers have worked for Defendants in Petco's District #52 during the applicable statutory period without receiving appropriate compensation, as required by the TLC.

123. This litigation is properly brought as a class action because of the existence of questions of fact and law common to the class which predominate over any questions affecting only individual members, namely whether Defendants are liable for failure to pay Mr. Ramos and other members of the putative class for all time they were required or allowed to work.

124. This litigation is properly brought as a class action because Mr. Ramos's claims are typical of the claims of the members of the class, inasmuch as all such claims arise from Defendants' standard policies and/or practices, as alleged herein. Like all class members, Mr.

Ramos was damaged by Defendants' common policy and/or practice of requiring or allowing the hourly paid managers in Petco's District #52 to work without compensation.

125. Mr. Ramos has no interests antagonistic to the interests of the other members of the class. Mr. Ramos is committed to the vigorous prosecution of this action and has retained competent counsel experienced in class action litigation. Accordingly, Mr. Ramos is an adequate representative and will fairly and adequately protect the interests of the class.

126. A class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy given the following factors:

a. Common questions of law and/or fact predominate over any individual questions which may arise, and, accordingly, there would accrue significant savings to both the Court and the class in litigating the common issues on a classwide instead of on a repetitive individual basis;

b. Despite the size of individual class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation; and

c. No unusual difficulties are likely to be encountered in the management of this class action in that all questions of law and/or fact to be litigated at the liability stage of this action are common to the class.

127. Class certification is also fair and efficient because prosecution of separate actions by individual class members would create a risk of differing adjudications with respect to such individual members of the class, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

128. Mr. Ramos anticipates that there will be no difficulty in the management of this litigation. This litigation presents FLSA and TLC claims of a type that have often been prosecuted on a classwide basis, and the class can easily be identified through a review of Defendants' records.

## FIRST CLAIM FOR RELIEF
## (FLSA - INDIVIDUAL VIOLATION)
## (AGAINST DEFENDANTS PETCO, COUGHLIN, SALINAS, AND KING)

129. Mr. Ramos repeats and realleges all preceding paragraphs of this Complaint inclusive, as if fully set forth herein.

130. At all times relevant herein, Defendants Petco, Coughlin, Salinas, and King employed Mr. Ramos within the meaning of the FLSA.

131. At all times relevant herein, Mr. Ramos was a non-exempt employee within the meaning of the FLSA.

132. Mr. Ramos was regularly required or allowed to work off the clock, without compensation.

133. Defendants knew or should have known that they were obligated under the FLSA to pay Mr. Ramos at the appropriate rate for all the time he worked.

134. Defendants' wrongful acts and omissions, as alleged herein, were not made in good faith or in conformity with or reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or the Texas Workforce Commission, or any administrative practice or enforcement policy of either such agency.

135. Defendants' conduct and practices, described herein, were willful, intentional, unreasonable, arbitrary, and in bad faith.

136. Because Defendants willfully violated the FLSA, a three (3) year statute of limitations applies to such violation, pursuant to 29 U.S.C. § 255.

137. As a result of the foregoing, Mr. Ramos was illegally deprived of compensation earned, in such amounts as may be determined at trial, and is entitled to recovery of all unpaid amounts,

liquidated damages, costs, reasonable attorney's fees, and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**(TLC - INDIVIDUAL VIOLATION)**
**(AGAINST DEFENDANTS PETCO, COUGHLIN, SALINAS, AND KING)**

138. Mr. Ramos repeats and realleges all preceding paragraphs of this Complaint inclusive, as if fully set forth herein.

139. At all times relevant herein, Defendants Petco, Coughlin, Salinas, and King employed Mr. Ramos within the meaning of the TLC.

140. At all times relevant herein, Mr. Ramos was entitled to the protection of the minimum-wage provisions of the TLC, Tex. Lab. Code § 65.051.

141. Mr. Ramos was regularly required or allowed to work off the clock, without compensation.

142. Defendants knew or should have known that they were obligated under the TLC to pay Mr. Ramos at least the federal minimum wage for all the time he worked.

143. Defendants' wrongful acts and omissions, as alleged herein, were not made in good faith or in conformity with or reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or the Texas Workforce Commission, or any administrative practice or enforcement policy of either such agency.

144. A two (2) year statute of limitations applies to such violation, pursuant to Tex. Lab. Code § 62.202.

145. As a result of the foregoing, Mr. Ramos was illegally deprived of compensation earned, in such amounts as may be determined at trial, and is entitled to recovery of all unpaid amounts,

liquidated damages, costs, reasonable attorney's fees and other compensation pursuant to Tex. Lab. Code §§ 62.201 and 62.205.

**THIRD CLAIM FOR RELIEF**
**(FLSA - COLLECTIVE VIOLATION)**
**(AGAINST ALL DEFENDANTS)**

146. Mr. Ramos repeats and realleges all preceding paragraphs of this Complaint inclusive, as if fully set forth herein.

147. At all times relevant herein, Defendants employed Mr. Ramos and members of the putative collective within the meaning of the FLSA.

148. At all times relevant herein, Mr. Ramos and members of the putative collective were and are non-exempt employees within the meaning of the FLSA.

149. Mr. Ramos and members of the putative collective regularly were and are required or allowed to work off the clock, without compensation.

150. Defendants knew or should have known that they were and are obligated under the FLSA to pay Mr. Ramos and members of the putative collective at the appropriate rate(s) for all the time they worked.

151. Defendants' wrongful acts and omissions, as alleged herein, were not made in good faith or in conformity with or reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or the Texas Workforce Commission, or any administrative practice or enforcement policy of either such agency.

152. Defendants' conduct and practices, described herein, were willful, intentional, unreasonable, arbitrary, and in bad faith.

153. Because Defendants willfully violated the FLSA, a three (3) year statute of limitations applies to such violation, pursuant to 29 U.S.C. § 255.

154. As a result of the foregoing, Mr. Ramos and members of the putative collective were and are illegally deprived of compensation earned, in such amounts as may be determined at trial, and are entitled to recovery of all unpaid amounts, liquidated damages, costs, reasonable attorney's fees, and other compensation pursuant to 29 U.S.C. § 216(b).

**FOURTH CLAIM FOR RELIEF**
**(TLC - CLASS VIOLATION)**
**(AGAINST ALL DEFENDANTS)**

155. Mr. Ramos repeats and realleges all preceding paragraphs of this Complaint inclusive, as if fully set forth herein.

156. At all times relevant herein, Defendants employed and employ Mr. Ramos and members of the putative class within the meaning of the TLC.

157. At all times relevant herein, Mr. Ramos and members of the putative class were and are entitled to the protection of the minimum-wage provisions of the TLC, Tex. Lab. Code § 62.051.

158. Mr. Ramos was regularly required or allowed to work off the clock, without compensation.

159. Defendants knew or should have known that they were and are obligated under the TLC to pay Mr. Ramos and members of the putative class at least the federal minimum wage for all the time they worked.

160. Defendants' wrongful acts and omissions, as alleged herein, were not made in good faith or in conformity with or reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or the Texas Workforce Commission, or any administrative practice or enforcement policy of either such agency.

161. A two (2) year statute of limitations applies to such violation, pursuant to Tex. Lab. Code § 62.202.

162. As a result of the foregoing, Mr. Ramos and members of the putative class were illegally deprived of compensation earned, in such amounts as may be determined at trial, and are entitled to recovery of all unpaid amounts, liquidated damages, costs, reasonable attorney's fees and other compensation pursuant to Tex. Lab. Code §§ 62.201 and 62.205.

**FIFTH CLAIM FOR RELIEF**
**(ADA FAILURE TO ACCOMMODATE - INDIVIDUAL VIOLATION)**
**(AGAINST DEFENDANTS PETCO, COUGHLIN, SALINAS, KING, AND BRAVO)**

163. Mr. Ramos repeats and realleges all preceding paragraphs of this Complaint inclusive, as if fully set forth herein.

164. At all relevant times, Defendant was a covered entity and employer under the ADA and Defendant had more than 15 employees.

165. On August 7, 2014, a physician designated by the Texas Department of Insurance certified that Mr. Ramos had reached "clinical maximum medical improvement" on October 24, 2013, and that he had a permanent "whole body impairment rating" of ten percent, due to the injuries he suffered in his workplace accident.

166. As of October 24, 2013, Mr. Ramos was a "qualified individual with a disability" within the meaning of the ADA.

167. Mr. Ramos additionally suffers from cancer which required treatment during the relevant period.

168. Mr. Ramos's physiological condition substantially limits him in various major life activities, particularly during the period of treatment for cancer, which can limit his ability to care for himself, interact with others, perform manual tasks, walk, stand, lift, bend, read, concentrate, think, communicate, and work, and his physiological condition also substantially limits major bodily functions, including his lymphatic and thyroid functions.

169. Mr. Ramos's history of cancer and its treatment constitute a "record of disability" as defined by the ADA, as does his history and treatment related to his workplace injury.

170. Mr. Ramos has a record of impairment which was known to Defendant prior to his termination and he has been regarded as having such impairment by Defendant.

171. The ADA requires, *inter alia*, an employer to provide reasonable accommodations to the known physical limitations of an otherwise qualified employee with a disability, unless the employer can demonstrate that providing such accommodation would impose an undue hardship on the operation of its business.

172. A reasonable accommodation is a modification or adjustment to a job that enables a qualified individual with a disability to enjoy equal benefits and privileges of employment as are available to a similarly-situated employee without a disability.

173. Mr. Ramos would have been able to continue performing his job if his disabilities had been reasonably accommodated by allowing him to take medical leave as necessitated by his conditions and by making other accommodations related to his physical impairment to allow him to continue to perform his job.

174. Mr. Ramos was not provided a reasonable accommodation for his known disabilities, in violation of the ADA.

175. Mr. Ramos complied with the requirements of the ADA and the requirements of Title VII of the Civil Rights Act of 1964 by filing a timely complaint with the Texas Workforce Commission, which was then cross-filed with the federal Equal Employment Opportunities Commission, alleging that Defendants had subjected him to unlawful disability discrimination.

176. The Texas Workforce Commission has issued Mr. Ramos a Notice of His Right to Sue, authorizing him to bring this civil action against these Defendants.

177. As a result of Defendants' conduct, Mr. Ramos is entitled to reinstatement and reasonable accommodation for his disabilities, and to whatever further relief the Court may deem just and proper.

178. Defendant's discriminatory and retaliatory conduct has caused and continues to cause Mr. Ramos to suffer substantial physical and mental/emotional distress and inconvenience.

**SIXTH CLAIM FOR RELIEF**
**(ADA WRONGFUL TERMINATION - INDIVIDUAL VIOLATION)**
**(AGAINST DEFENDANTS PETCO, COUGHLIN, SALINAS, KING, AND BRAVO)**

179. Mr. Ramos repeats and realleges all preceding paragraphs of this Complaint inclusive, as if fully set forth herein.

180. As set forth above, Mr. Ramos has suffered from disabilities, as defined by the ADA, since October 24, 2013.

181. Despite his disabilities, Mr. Ramos would have been able to perform the essential functions of his job if Defendants had made reasonable accommodation for his disabilities.

182. Instead of providing such reasonable accommodation, Defendants terminated him because of, in whole or in part, his disabilities.

183. Such conduct constitutes unlawful discrimination, in violation of 42 U.S.C. § 12112.

184. As a direct result of the foregoing, Mr. Ramos has incurred and continues to incur substantial loss of wages, earning capacity, and fringe benefits; has suffered, and will continue to suffer, emotional distress; and has suffered, and will continue to suffer, other damages as will be shown at trial.

185. Mr. Ramos complied with the requirements of the ADA and the requirements of Title VII of the Civil Rights Act of 1964 by filing a timely complaint with the Texas Workforce

Commission, which was then cross-filed with the federal Equal Employment Opportunities Commission, alleging that Defendants had subjected him to unlawful disability discrimination.

186. The Texas Workforce Commission has issued Mr. Ramos a Notice of His Right to Sue, authorizing him to bring this civil action against these Defendants.

187. As a result of Defendants' conduct, Mr. Ramos is entitled to an award in the amount of the wages, benefits, and out-of-pocket losses he suffered as a result of being wrongfully fired; front pay; his attorneys' fees and costs; damages for emotional distress and punitive damages; and whatever other and further relief the Court may deem just and proper.

## SEVENTH CLAIM FOR RELIEF
## (FLSA WRONGFUL TERMINATION - INDIVIDUAL VIOLATION)
## (AGAINST DEFENDANTS PETCO, COUGHLIN, SALINAS, AND KING)

188. Mr. Ramos repeats and realleges all preceding paragraphs of this Complaint inclusive, as if fully set forth herein.

189. On September 22, 2012, Mr. Ramos submitted a written complaint to Defendant Coughlin, regarding, *inter alia*, Defendants' pay practices.

190. Following the submission of his complaint, Mr. Ramos was subjected by Defendants to discriminatory and retaliatory employment actions, up to and including his termination on March 25, 2015.

191. Defendants knew or should have known that the FLSA prohibits retaliation against an employee for filing a complaint regarding his employers' pay practices.

192. Defendants' termination of Mr. Ramos, as alleged herein, was not in good faith, or in conformity with or reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or the Texas Workforce Commission, or any administrative practice or enforcement policy of either such department.

193. Defendants' above-described violation of the FLSA was willful, arbitrary, unreasonable and in bad faith.

194. As a result of the foregoing, Mr. Ramos was illegally deprived of wages he could have earned, in such amounts as may be determined at trial, and is entitled to recovery of those lost wages, liquidated damages, and punitive damages, pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Ramos respectfully requests that this Court grant the following relief:

(A) A declaratory judgment that Defendants' practices alleged herein violate the FLSA, 29 U.S.C. §§ 201 *et seq*., and related regulations;

(B) A declaratory judgment that Defendants' practices alleged herein violate the Tex. Lab. Code § 65.051, and related regulations;

(C) An order for injunctive relief ordering Defendants to end all of the illegal practices alleged herein pursuant to FLSA, Texas statutes, and related laws and regulations;

(D) Judgment for damages for all unpaid compensation under the FLSA, 29 U.S.C. §§ 201, *et seq.,* and attendant regulations at 29 C.F.R. §§ 516 *et seq.;*

(E) Judgment for liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq.,* and attendant regulations at 29 C.F.R. §§ 516 *et seq*., in an amount equal to all compensation owed to Mr. Ramos;

(F) Judgment for damages for all unpaid compensation and liquidated damages, pursuant to Tex. Lab. Code §§ 62.201 and 62.205;

(G) Judgment for Mr. Ramos for lost wages, liquidated damages, mental and emotional distress, and punitive damages, pursuant to 29 U.S.C. § 216(b) and 42 U.S.C. §§ 12101 *et seq*., as a result of his retaliatory discharge by Defendants;

(H) An order directing Defendants, at their own expense, to investigate and account for the number of hours actually worked by Mr. Ramos and all members of the proposed FLSA Collective and the proposed Rule 23 Class;

(I) An order directing Defendants to supply to Mr. Ramos's counsel the names and last known postal addresses of all members of the proposed FLSA Collective, so that Mr. Ramos may send to them notice of this collective action;

(J) Judgment for any and all civil penalties to which Mr. Ramos and all members of the proposed FLSA Collective and the proposed Rule 23 Class may be entitled;

(K) An Incentive Award for Mr. Ramos;

(L) Leave to add additional Plaintiffs by motion, the filing of written consents, or any other method approved by the Court;

(M) Equitable tolling effective to the date of the filing of this Complaint;

(N) An order directing Defendants to pay Mr. Ramos and all members of the proposed FLSA Collective and the proposed Rule 23 Class prejudgment interest, reasonable attorney's fees and all costs connected with his action; and

(O) Such other and further relief as this Court may deem necessary, just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Mr. Ramos demands trial by jury on all questions of fact raised by the Complaint.

Dated: March 23, 2016

Jersey City, New Jersey

Respectfully submitted,


**JTB LAW GROUP, LLC**

By: */s/ Patrick S. Almonrode*
Patrick S. Almonrode
*will seek pro hac vice admission*
*patalmonrode@jtblawgroup.com*
Jason T. Brown
*jtb@jtblawgroup.com*
155 2nd Street, Suite 4
Jersey City, NJ 07302
(201) 630-0000
(855) 582-5297 (fax)

**DEAN OMAR & BRANHAM, LLP**

By: */s/ Corinna Chandler*
Corinna Chandler
Texas Bar No. 24061272
*cchandler@dobllp.com*
Charles W. Branham, III
*tbranham@dobllp.com*
3900 Elm Street
Dallas, Texas 75226
(214) 722-5990
(214) 722-5991 (fax)

*Attorneys for Plaintiff*

DocuSign Envelope ID: 768CA3F4-32DA-483F-AF43-4CD72C9794E7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **RODNEY RAMOS**, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**PETCO ANIMAL SUPPLIES, INC.**, a Corporation, and **RICHARD COUGHLIN**, **TORIBIO SALINAS**, **STEVEN KING**, **FELIX BRAVO**, and **JOHN DOES 1-500**, Individuals,<br><br>Defendants. | **Docket No.:** ____________________ |

**DECLARATION OF RODNEY RAMOS**

My name is Rodney Ramos. I am a plaintiff in this case. I am over the age of eighteen and capable of making this declaration. I have personal knowledge of the facts and circumstances alleged herein giving rise to claims under the Texas Labor Code, and declare under penalty of perjury that those are true and correct.

Dated: 3/22/2016

DocuSigned by:
Rodney Lee Ramos
2D7F635EE1C8486...
Rodney L. Ramos